## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **SEAN T. STAFFORD** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 10 CV 5951** |
| **v.** | ) | |
| | ) | |
| **MICHAEL ASTRUE,** | ) | **Magistrate Judge Young B. Kim** |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | **May 24, 2011** |

### MEMORANDUM OPINION and ORDER

Throughout his adult life, Sean Stafford has struggled with alcohol addiction, riding a more-or-less continuous roller coaster from binging to sobriety and back again. Stafford also suffers from depression and anxiety, and he claims that these mental impairments—rather than his addiction—prevent him from working. Currently before the court is Stafford's motion for summary judgment challenging the denial of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382c. For the following reasons, the motion is denied:

### Procedural History

Stafford applied for SSI and DIB in June 2008, claiming that his disability began on July 1, 2007. (A.R. 117, 122.) The Commissioner denied his claims initially and on reconsideration. (Id. at 59-62.) Stafford then requested, and was granted, a hearing before an administrative law judge ("ALJ"). (Id. at 107.) The ALJ found that Stafford's alcohol

addiction is material to his disability and, therefore, concluded that he is not "disabled" as defined in the Social Security Act. (A.R. 24.) When the Appeals Council denied review, (id. at 1), the ALJ's decision became the final decision of the Commissioner, *see Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Stafford then filed the current suit seeking judicial review of the ALJ's decision. *See* 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c).

## Facts

Stafford first used alcohol at the age of 12 and began drinking regularly at 15. (Id. at 434-36.) Since his early twenties Stafford has cycled through periods in which he binge-drinks for days, then sobers up for a number of weeks, then starts drinking again. (Id. at 434.) His drinking has led to a string of arrests, hospitalizations, debt, and damaged relationships. (Id. at 435.) At least since the beginning of 2006 Stafford has fought against his addiction, participating in group and individual therapy programs and sometimes achieving sobriety for several months. (Id. at 443, 664.) When he is sober, Stafford experiences depression, anxiety, and persistent hopelessness. (Id. at 550, 642, 663-64.) Stafford claims that his depression and anxiety became disabling on July 1, 2007. (Id. at 117, 122.) At his August 2009 hearing before an ALJ, Stafford provided both documentary and testimonial evidence in support of his claims.

**A.      Stafford's Evidence**

Beginning in January 2006, Stafford participated in group and individual therapy sessions at Community Counseling Centers of Chicago ("C4") as part of a case management plan to address his alcohol addiction. (A.R. 388, 443.) He was able to stay clean for four months in early 2006, but in May of that year he relapsed. (Id. at 455.) By June he had stopped drinking and reported to his therapy group that "everyday he stays sober the better he feels." (Id. at 460.) This time he was able to stay sober for three and a half months, during which he repeated to Thomas Pickens, his individual therapist at C4, that his well-being improves with sobriety. (Id. at 465.) He told Pickens on more than one occasion in 2006 that idle time—and the accompanying boredom and feelings of inadequacy—threaten his sobriety.[1] (Id. at 465, 467.) In November 2006 Stafford told Pickens that he was depressed even before he began drinking, but that he "feels more stable now," and that his depression is "nothing serious." (Id. at 467, 472.)

Stafford went through a particularly tumultuous year in 2007, during which he was never sober for more than a month. (Id. 398.) It started off smoothly—in January 2007 Stafford told Pickens that he felt "a bit anxious over the holiday but is feeling better now."

---

[1] In the months leading up to the claimed disability onset date, Stafford told Pickens that he "knows that he has trouble keeping a job but worries that disability will give him too much free time." (A.R. 453.) Nine days before his claimed onset date, on June 22, 2007, Stafford talked with Pickens about whether he should try to get a job or apply for SSI. (Id. at 489.) Pickens encouraged him to get a job. (Id.) At least once in 2008 Stafford attributed his drinking to "feelings of aimlessness." (Id. at 514.)

(A.R. 477.) The following month he reported feeling persistent "low grade depression," and Pickens tried to help him understand that he might struggle with depression for his entire life. (Id. at 391, 479.) In March 2007 Stafford reported to Pickens that he was using cocaine, heroin, and alcohol. (Id. at 480-82.) He sobered up for a week and a half, during which time he started working at a UPS store. (Id. at 392.) But right after Stafford got paid he used again and within two weeks he had quit his job. (Id. at 484-85.) In June 2007 he reported feeling "speedy, depressed, and out-of-control." (Id. at 393.) He was hospitalized for a day and a half after a drinking binge, and reported that he was having strange feelings when sober, including feeling like he was a police officer and wanting to "shake people down on the train." (Id.)

Things continued to deteriorate around Stafford's claimed onset-date, July 1, 2007. In mid-July Stafford was hospitalized after he tried to commit suicide by climbing down on the el tracks while he was intoxicated. (Id. at 262, 265.) He was rescued by a bystander. (Id.) He later told his therapist that he never thought of hurting himself unless he was drinking. (Id. at 395.) By the end of July he had been sober for two and a half weeks and reported to Pickens and his group therapist that he was "ridiculously anxious"—more so than he had been in the past. (Id. at 394, 492.) Two months later he reported feeling "more even," said that he was starting to work out more, and reiterated that his moods improve with sobriety. (Id. at 494-95.) But by October 2007 Stafford had relapsed again, and was re-hospitalized after a police officer caught him urinating on an el platform. (Id. at 250.) In

mid-November Stafford's psychiatrist described him as only "mildly anxious," but shortly thereafter he was rehospitalized with suicidal ideations during a drinking binge. (A.R. 228, 240.) The hospital discharge report notes that Stafford's anxiety is a precipitator for his drinking and interferes with his sleep. (Id. at 228.)

Stafford also experienced a series of ups and downs in 2008. In February he was arrested in an Indianapolis casino for drunken disorderly conduct and in March he presented drunk to a hospital emergency room, reporting that he had thoughts of killing himself on the el when he was intoxicated. (Id. at 307, 311, 502.) In April Stafford told Pickens that he was always depressed and agitated, and that he had enrolled in school but felt unmotivated. (Id. at 403.) That same month Stafford went on a week-long drinking binge, running up credit card bills, showing up to class drunk, and finally being admitted to the hospital when he attempted suicide with a combination of cocaine and alcohol. (Id. at 339, 344, 507.) In May Stafford dropped out of school after missing too many classes. (Id. at 510.) He told Pickens that the more often he drinks the more hopeless he becomes, and that he never feels suicidal when he is sober. (Id. at 510.) In early June Stafford reported six weeks of sobriety. (Id. at 547.) He said that he was exercising and "feeling better," but his psychiatrist noted that Stafford was anxious. (Id.) His anxiety continued into July when he started drinking again in response to a feeling of "aimlessness" and was arrested after getting into a drunken argument with a used car salesman. (Id. at 514.) He was hospitalized again in mid-July for substance abuse and suicidal ideation. (Id. at 514-15, 549.) He began drinking again upon

his release and broke his arm during a fight.  (A.R. 549, 642.)  In mid-August he reported

depression and anxiety after a week of sobriety.  (Id.)

At the end of September 2008 Pickens completed an assessment of Stafford in which

he noted that Stafford reported that his depression symptoms had gotten worse over the years.

(Id. 433, 438.)  Pickens described Stafford as hopeless, lacking in motivation, and unable to

follow through with plans.  (Id. at 433.)  He reported that when he was drinking Stafford

would consume 6-12 beers a day in addition to a few mixed drinks.  (Id. at 434.)  Pickens

reported that Stafford said he drank to reduce symptoms of boredom, worry, and stress, but

that his mood swings and anxiety are also a consequence of drinking.  (Id. at 435-36.)

Stafford continued to drink on and off in the months leading up to his August 2009

hearing.  (Id. at 662.)  In March 2009 he reported being sober for seven weeks and noted that

his mood had improved and he was sleeping well, although he was still experiencing

considerable anxiety.  (Id. at 663.)  The next month he told Pickens that he was feeling better

than he had in a long time.  (Id. at 658.)  By May 2009 Stafford had achieved four and a half

months of sobriety, but he was battling "severe constant anxiety, irritability, fidgeting and

muscle tension."  (Id. at 664.)  He also had what he described as a panic attack while

shopping at a Wal-Mart store.  (Id.)  By the end of May, Stafford had been arrested after

drinking and losing money at a casino.  (Id. at 661.)  On June 8, 2009, he showed up for his

individual therapy session looking intoxicated and told Pickens that he was struggling with

depression.  (Id. at 661.)

**B.    Stafford's Testimony**

At his August 2009 hearing before the ALJ Stafford testified that he had not had a drink since May 2009 but that he remains unable to work because he has "trouble being around people . . . can't get up in the morning . . . [and] can't really function . . . on a day-to-day basis." (A.R. 33-34.)  This testimony is inconsistent with the medical records showing that he was drunk during a therapy session in June 2009.  (Id. at 661.)  Stafford testified that after he stopped drinking his depression "got a little bit better" but that his anxiety got worse. (Id. at 34.)  He described his anxiety as "social anxiety" and said that when he is in public he is afraid that strangers are looking at him.  (Id. at 34, 36.)  Stafford also testified that he has trouble sleeping at night, and that he then oversleeps during the day.  (Id. at 35.)  When asked to describe his troubles with concentration and memory, Stafford said that it takes him days to do laundry and that he had trouble filling out the forms for his SSI claims.  (Id. at 35-36.)  He said that he has difficulty shopping in large stores because "sometimes if I can't see the exit, I get really, really nervous."  (Id. at 38.)  Stafford testified that he constantly worries about life in general.  (Id.)

**C.    Medical Expert's Testimony**

Following Stafford's testimony the ALJ called medical expert Mark Oberlander to give his opinion regarding Stafford's limitations based on his review of the medical evidence. Oberlander summarized that evidence and read into the record a treatment note showing that at four and a half months sober, Stafford complained of "severe constant anxiety, irritability,

fidgeting, and muscle clenching." (A.R. 44.) When asked whether Stafford's depression and anxiety exist independent of his drinking, Oberlander replied that "as in many of these situations, it is very difficult, if not impossible, to say which came first, the chicken or the egg," and that his symptoms were "intertwined." (Id. at 45.) Oberlander initially opined that if Stafford stopped drinking, he would have marked limitations in the area of concentration, persistence, or pace, but only moderate limitations in the remaining domains. (Id. at 45-46.) When the ALJ asked whether Stafford is capable of maintaining employment, Oberlander answered that he "would retain the capacity to engage in simple, repetitive work activity with some accommodation for less than extensive contact with the public, coworkers, and supervisors, and certainly in a work setting that does not have extremely demanding production quotas." (Id. at 47.) The ALJ then told Oberlander that if Stafford has a marked impairment in concentration, persistence, and pace even when sober he would be considered unable to work, and he pressed Oberlander to say whether Stafford's impairment is at the marked level even when sober. (Id.) In response, Oberlander observed that a treatment note from a period of seven weeks' sobriety showed that Stafford was much improved, although still anxious. (Id. at 47-48.) Based on that note, Oberlander modified his opinion to downgrade Stafford's concentration impairment from marked to moderate. (Id. at 48.)

D.    The ALJ's Decision

After considering the proffered evidence, the ALJ concluded that Stafford has disabling impairments but that he is not entitled to benefits because his alcohol abuse is a

8

contributing factor material to the determination of disability.  *See* 20 C.F.R. §§ 404.1535,

416.935.  In so finding, the ALJ applied the standard five-step sequence, *see id.* § 404.1520,

which requires him to analyze:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant
> has a severe impairment; (3) whether the claimant's impairment meets or
> equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R.
> § 404, Subpt. P, App. 1; (4) whether the claimant can perform [his] past work;
> and (5) whether the claimant is capable of performing work in the national
> economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309,

313 (7th Cir. 1995)).  If at step three of this framework the ALJ finds that the claimant has

a severe impairment which does not meet the listings, he must "assess and make a finding

about [the claimant's] residual functional capacity based on all the relevant medical and other

evidence."  20 C.F.R. § 404.1520(e).  The ALJ then uses the residual functional capacity

("RFC") to determine at steps four and five whether the claimant can return to his past work

or to different available work.  *Id.* § 404.1520(f), (g).  Where a claimant is found incapable

of returning to work and there is medical evidence of substance abuse, the ALJ must take the

further step of determining whether the substance abuse is a contributing factor material to

the determination of disability.  *See* 20 C.F.R. §§ 404.1535, 416.935.  In making this

determination, the ALJ must evaluate "whether, were the applicant not a substance abuser,

[he] would still be disabled."  *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006); *see*

*also* 20 C.F.R. 404.1535(b)(1).

Here, the ALJ found at step one that Stafford had not engaged in substantial gainful activity since July 1, 2007. (A.R. 17.) At step two the ALJ determined that Stafford has severe impairments consisting of depression, anxiety disorder, and substance abuse disorder. (Id.) At step three the ALJ determined that Stafford's impairments meet sections 12.04, 12.06, and 12.09 of the listings referenced in 20 C.F.R. §§ 404.1520(d) and 416.920(d), because he has marked restrictions in daily living and with regard to concentration, persistence, or pace, and because he had repeated episodes of decompensation, as reflected in the records of his multiple hospitalizations. (Id. at 17-18.) Next the ALJ determined that if Stafford stopped abusing substances, he would still have severe impairments in the form of depression and anxiety, but they would no longer meet or medically equal the listings. (Id. at 18.) He reached that determination because all of Stafford's hospitalizations occurred while he was drunk, and the ALJ found that he would have no more than moderate limitations in any area of functioning if he stopped drinking. (Id. at 18-19.)

Turning to step four, the ALJ determined that if Stafford stopped abusing substances, he would have the RFC to perform a full range of work at all exertional levels as long as he is limited to performing simple, repetitive tasks without strict quotas in a job requiring no more than occasional contact with the general public, coworkers, and supervisors. (Id. at 19.) In making that determination, the ALJ found that Stafford's description of the limiting effects of his symptoms are not entirely credible. (Id. at 20.) In explaining the credibility finding, the ALJ noted that the medical records show significant stabilization in his

symptoms with abstinence from drinking. (Id.) The ALJ noted that Stafford had been able to participate actively in group therapy and recovery meetings, that he had been able to attend school and obtain a degree, and that he had maintained an exercise regimen. (Id. at 18, 22.) The ALJ pointed out that his conclusions are consistent with Oberlander's opinion that Stafford could maintain work if he stopped abusing substances. (Id. at 22.) After concluding that Stafford could not perform any of his previous jobs, at step five the ALJ stated that Stafford could work as an assembler, parts inspector, sorter, hand packager, or painter. (Id. at 23-24.)

## Analysis

This court reviews the Commissioner's decision only to ensure that it is free of legal error and supported by substantial evidence, meaning evidence that "a reasonable mind might accept as adequate to support a conclusion." *Clifford*, 227 F.3d at 869 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also* 42 U.S.C. § 405(g). Put otherwise, substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This court's role is not "to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Rather, this court must affirm an adequately articulated decision by the Commissioner so long as sound opinions could vary as to whether the claimant is disabled. *Ulloa v. Astrue*, 611 F.Supp.2d 796, 808 (N.D. Ill. 2009).

Stafford's primary argument in support of summary judgment is that the ALJ erred in finding his drug and alcohol abuse to be a factor material to his disability. Drug addiction and alcoholism—or "DAA," in social security lingo—is a material factor if Stafford would not be disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1). Stafford argues that in his case it is impossible to separate the effects of his drinking from the effects of his depression and anxiety, and that he is therefore entitled to a finding that his DAA is not material. In support of this argument, Stafford points to the following language included in an Emergency Teletype promulgated by the Social Security Administration ("SSA") in 1996:

> When it is not possible to separate mental restrictions and limitations imposed by the DAA and the various mental disorders shown by the evidence, a finding of 'not material' would be appropriate.

*Smith v. Massanari*, No. 00 CV 7652, 2002 WL 480955, at *6 (N.D. Ill. March 25, 2002) (quoting Dale Cox, SSA Emergency Teletype, Questions & Answers Concerning DAA from the July 2, 1996 Teleconference, Answer 29, Aug. 30, 1996.) Noting that Oberlander testified that Stafford's depression, anxiety, and substance use are "very much intertwined" and that it is "very difficult, if not impossible to say which came first," (A.R. 45), Stafford argues that the ALJ was required, under the plain language of the teletype, to find his drinking "not material" to his limitations. Stafford characterizes Oberlander's testimony as evidence that it is "impossible to tease out the impact of the two impairments," and thus concludes that the ALJ was required to find him disabled. (R. 18, Pl.'s Mem. at 10.)

There are several reasons why Stafford's argument fails to persuade. First, it is unclear that the 1996 teletype language is entitled to the weight Stafford ascribes to it. The Ninth Circuit has expressly rejected the teletype on which Stafford relies as unpersuasive and conflicting with the widely-recognized principle that "the claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Parra v. Astrue*, 481 F.3d 742, 748-49 (9th Cir. 2007); *see also Doughty v. Apfel*, 245 F.3d 1274, 1275-76 (11th Cir. 2001); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Although the Seventh Circuit has not weighed in on the claimant's burden of proof with respect to the materiality question, other district courts in this circuit have agreed that it is the claimant's burden to show that his DAA is not material. *See Gritzmacher v. Astrue*, 572 F.Supp.2d 1051, 1060 (W.D. Wis. 2008); *Mayes v. Astrue*, No. 07 CV 0193, 2008 WL 126691, at *7 (S.D. Ind. Jan. 10, 2008). And if the burden of proof lies with the claimant, Stafford's argument that a claimant is entitled to an automatic finding of disability anytime the record evidence suggests that mental illness and substance abuse symptoms are interrelated cannot be correct.

In *Parra*, the Ninth Circuit addressed an argument similar to Stafford's and concluded that the teletype is inconsistent with the purpose behind the materiality inquiry. 481 F.3d at 749. The *Parra* court noted that in excluding impairments caused by DAA from the disability equation, Congress sought "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Id.* at 749-50 (*quoting Ball v.*

*Massanari*, 254 F.3d 817, 824 (9th Cir. 2001)). But here Stafford reads the teletype to establish a rule which would promote the opposite result. If, as Stafford urges, an ALJ were required to find disabled any alcoholic claimant who presents inconclusive evidence of materiality, a disability applicant would lose his incentive to stop drinking. That is because "abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated. His claim would be guaranteed only as long as his substance abuse continues—a scheme that effectively subsidizes substance abuse in contravention of the statute's purpose." *Id.* at 750. Accordingly, this court agrees that Stafford is not entitled to a finding of disability simply because his alcohol addiction and the effects of his depression and anxiety are interrelated.

But even if, as Stafford suggests, a tie goes to the claimant, Stafford's assertion that it was "impossible to tease out" the impact of his drinking from the symptoms of his depression and anxiety is based on a convoluted reading of Oberlander's testimony. (R. 18, Pl.'s Mem. at 10.) Oberlander did not testify, as Stafford asserts, that it is impossible to delineate which of Stafford's impairments are attributable to his drinking versus his anxiety and depression. What Oberlander said is that "it is very difficult, if not impossible, to say which came first, the chicken or the egg," and that Stafford's anxiety, depression, and substance abuse are "very much intertwined." (A.R. 45.) In other words, Stafford's periods of anxiety, depression, and drinking often overlap, and it is unclear whether he began drinking because he was depressed and anxious or whether he is depressed and anxious

because he is an alcoholic. But Oberlander did not say that the manifestations of Stafford's impairments are impossible to separate. In fact, he went on to explain that his review of Stafford's sober periods led him to believe that if he stopped drinking, Stafford's symptoms would subside to the point where he could sustain work. (Id. at 47-48.)

It also must be pointed out that the ALJ's decision does not place the weight on Oberlander's testimony that Stafford suggests. The ALJ's only reference to Oberlander's opinion is the observation that his own conclusions are consistent with Oberlander's testimony that Stafford "could perform work if he remains free of substances." (A.R. 22.) There is plenty of evidence in the record, in addition to Oberlander's testimony, supporting that conclusion. All of Stafford's hospitalizations occurred in connection with a drinking binge. Stafford repeatedly reported to his therapists that his moods and general well-being improved with sobriety. (Id. at 460, 465, 494-95, 656, 658.) His self-reporting is corroborated by his GAF scores. During intervals of sobriety, he was classified as having a GAF as high as 65, (id. at 233, 262, 265), whereas when he was drunk, his GAF score was as low as 10-20, (id. at 567).[2] On many occasions, Stafford told his therapists that his drinking was caused by boredom and low self-esteem, rather than depression or anxiety. (Id.

_____

[2] Oberlander testified that according to the American Psychiatric Association, a GAF score of 10-20 "indicates severe psychopathology across the board, non-functional." (A.R. 43.) A score of 65, on the other hand, indicates "some mild symptoms . . . OR some difficulty in occupational, social, or school functioning . . . but generally functioning pretty well." *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

at 465, 467, 470, 514.)  Thus substantial evidence supports the ALJ's conclusion that Stafford's drinking is a material factor contributing to his disability.  *See Diaz v. Astrue*, 685 F.Supp.2d 825, 835-36 (N.D. Ill. 2010).

In arguing that the ALJ's materiality determination is the product of legal error Stafford places a great deal of emphasis on the ALJ's comment that the "record does not establish a 6 month period of sobriety (after the alleged onset date) with which to evaluate the claimant's ability to function in absence of alcohol." (A.R. 20.)  Stafford argues that the ALJ's comment reflects "an improper independent medical determination" justifying reversal because the SSA does not acknowledge a six-month sobriety period as a prerequisite to determining a claimant's functionality.  (R. 18, Pl.'s Mem. at 12.)  Although it is true, as is often stated, that an ALJ may not "play doctor," *see Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), that is not what happened here.  The ALJ did not place any significance on the absence of a six-month period of sobriety, and specifically analyzed the evidence of shorter periods of sobriety after Stafford's alleged onset date, in accordance with the SSA's instruction that ALJ's examine the claimant's condition after one-month periods of sobriety. *See* SSA Program Operation Manual System, DI 90070.050(D)(3)(c); (A.R. 20-21).  The ALJ observed that Stafford continued to report anxiety even during periods of sobriety, but noted that in the most recent records Stafford had reported feeling much less depressed and had been able to maintain an exercise routine.  (Id. at 18, 21-22.)  Based on the documentation showing that Stafford's mental state improved with even brief periods of

sobriety, the ALJ reasonably concluded that a sober Stafford could work within the limitations of an RFC accommodating his on-going anxiety. That conclusion did not hinge in any meaningful way on the ALJ's seemingly off-handed remark that the record post-onset date did not reflect a six-month period of sobriety.

Next Stafford argues that the ALJ improperly ignored Oberlander's testimony demonstrating that he has marked limitations in the area of concentration, persistence, or pace, and suggests that the ALJ pressured Oberlander to alter his opinion regarding Stafford's limitations in that area. His argument stems from an exchange between the ALJ and Oberlander at the hearing in which the ALJ asked him to opine as to how Stafford would be limited if he stopped drinking. (A.R. 45-46.) Oberlander answered that "even without the use of substances, due to the anxiety preoccupations," Stafford's capacity for concentrating would be markedly impaired. (Id. at 46.) The ALJ followed-up by asking whether Stafford could not work even if he maintained his sobriety. (Id. at 46-47.) Oberlander answered:

> that far I cannot extend my testimony. I do believe that even though with those limitations in terms of concentration and attention, that without the use of substances, the individual would retain the capacity to engage in simple, repetitive work activity with some accommodation for less than extensive contact with the public, coworkers, and supervisors, and certainly in a work setting that does not have extremely demanding production quotas.

(Id. at 47.) This seemed to flummox the ALJ, who said that the SSA would view Oberlander's testimony as "inconsistent," because a marked limitation in concentration would result in a disability finding. (Id. at 47.) But as the government points out, in order

17

to meet listing 12.04 Stafford's mental impairments had to cause *two* marked or one extreme level of limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04B. In any event, the ALJ tried to clarify the perceived inconsistency in Oberlander's opinion by asking him to explain again whether he believed Stafford's limitation would be at the marked level when substance-free. (A.R. 47.) Oberlander went back to one treatment note which states Stafford was much improved at seven weeks sober, although he was still considerably anxious. (Id. at 48.) Oberlander then said "[b]ased on that treating source report, the functional impairment in that domain without the use of substances would be moderate, not marked." (Id.) This exchange does not reveal, as Stafford suggests, that the ALJ ignored evidence in finding his limitations in concentration to be only moderate. Oberlander made clear at the outset of his testimony that he had reviewed the entire medical record and he recognized that Stafford suffered from anxiety even while sober. He simply clarified that the evidence reflecting Stafford's sober periods would only support a moderate limitation, despite that lingering anxiety. And again, the court notes that the ALJ's conclusions regarding Stafford's limitations in this area rest principally on the record as a whole, rather than solely on Oberlander's testimony as Stafford's argument seems to suggest. The ALJ acknowledged that Stafford experienced anxiety even while sober, (*see* A.R. 22), and accounted for that impairment in crafting the RFC.

Stafford also argues that the ALJ's conclusion regarding Stafford's concentration limitations are based on an error of fact because the ALJ noted that he was able to participate

in group treatment. This represents an error of fact, says Stafford, because Oberlander testified that Stafford was passive during group therapy sessions. But the ALJ did not rely on Oberlander's testimony in concluding that Stafford participated in therapy. Rather, he relied on the ample documentary evidence detailing that participation. (*See* A.R. 22.) Stafford's records reflect that his group therapist repeatedly noted over the course of many months that Stafford was actively participating in the sessions, "asking good questions," and "sparking discussions." (Id. at 447-48, 450, 464, 476, 479-80, 649, 656.) Accordingly, the ALJ's observation is supported by substantial evidence.

Finally, Stafford argues that the ALJ committed reversible error in assessing Stafford's credibility. An ALJ's credibility determinations are entitled to special deference, and will be reversed only if patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's credibility assessment this court must "give the opinion a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2010) (quoting *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)). Here Stafford faults the ALJ's use of the boilerplate phrase, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (A.R. 20.) He argues that this comment shows the ALJ dismissed Stafford's testimony simply because it did not support his idea of the RFC. That would have been a concern if the ALJ had not gone on to further explain the credibility decision, but here, the ALJ examined Stafford's descriptions

of his symptoms and gave reasons, which are supported by the record, to discount them.

Specifically, the ALJ noted that although Stafford testified that it is his anxiety and depression—not his drinking—that causes his concentration problems, the treatment records show that he was able to attend school and receive a degree, participate in group treatment, and establish and maintain an exercise regimen. (A.R. 18.) The explanation regarding Stafford's degree is not necessarily supported by relevant evidence, since Stafford obtained that degree years before his alleged onset date, but the references to exercise and to group treatment are amply supported by his treatment records. (*See* id. at 447-48, 450, 464, 476, 479-80, 649, 652, 659, 663-64.) And it was not out of line for the ALJ to note the disconnect between Stafford's testimony that he feels unable to work and his repeated statements to his therapist at moments of sobriety that he considered himself capable of trying to work. (Id. at 445, 452.) Because the ALJ's credibility determination is not "patently wrong," it must be sustained. *See Jones*, 623 F.3d at 1160.

**Conclusion**

The record makes clear that Stafford is fighting hard against an addiction that has wreaked havoc on his life. But the record also supports the ALJ's conclusion that Stafford's anxiety and depression are not so severe that he would remain disabled were he to conquer his alcoholism. Accordingly, Stafford's motion for summary judgment is denied and the decision of the Commissioner is affirmed.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**